UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **WILFRED SAMUEL RATTIGAN,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 04-2009 (ESH) |
| **ERIC H. HOLDER, JR.,** Attorney General, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

This matter is here again on defendant's motion to dismiss. *See also Rattigan v. Gonzales* ("*Rattigan I*"), No. 04-CV-2009, 2006 WL 4916613, at *1 (D.D.C. Aug. 2, 2006) (granting in part and denying in part defendant's motion to dismiss for failure to exhaust); *Rattigan v. Gonzales* ("*Rattigan II*"), 503 F. Supp. 2d 56 (D.D.C.2007) (granting in part and denying in part defendant's motion to dismiss for failure to state a claim); *Rattigan v. Holder* ("*Rattigan III*"), 604 F. Supp. 2d 33 (D.D.C. Mar 30, 2009) (granting in part and denying in part defendant's motion for summary judgment); *Rattigan v. Holder*, No. 04-CV-2009 (D.D.C. July 6, 2009) (minute order denying defendant's motion for reconsideration of order on summary judgment). Plaintiff Wilfred Rattigan, a black male of Jamaican descent, is employed by the Federal Bureau of Investigation ("FBI"). From July 2000 through July 2003, plaintiff served as the FBI's Legal Attaché ("Legat") in Riyadh, Saudi Arabia. During that time he reported to the FBI's Office of International Operations ("OIO").

The sole remaining issue in this case is whether plaintiff's employer retaliated against

1

him, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), for complaining that OIO officials had discriminated against him on the basis of his race and national original. Defendant has now moved to dismiss the case for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), claiming that it just learned that the Court lacked jurisdiction to proceed. (Def.'s Mot. to Dismiss for Lack of Jurisdiction ["Mot. to Dismiss"] [Dkt. No. 97] at 1.) Despite the fact that defendant made this motion almost five years after the initial complaint was filed and only one business day before trial is set to commence, "[a] litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action," and "a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct . . . ."[1] *Kontrick v. Ryan*, 540 U.S. 443, 455, 456 (2004). Having considered defendant's challenge to its jurisdiction and for the reasons set forth below, defendant's motion will be denied.

As this is the fifth dispositive motion filed by defendant, the Court need not repeat the facts and procedural history which are set forth in *Rattigan II*, 503 F. Supp. 2d at 62-67, and *Rattigan III*, 604 F. Supp. 2d at 37-45. In short, plaintiff claims that defendant impermissibly retaliated against him for his complaints of discrimination when OIO Section Chief Michael Pyszczymuka referred to the Security Division an electronic communication drafted by FBI agent Donovan Leighton ("the Leighton EC") and edited by at least one OIO official, Walt Smith, which recommended that plaintiff's activities as Legat in Saudi Arabia be investigated to determine whether he presented a security risk. (*See* Def.'s Mot. for Summ. J. ("SJ Mot.") [Dkt.

---

[1] The Court notes that defendant's failure to raise this jurisdictional issue until this late date demonstrates a total disregard for both the Court and opposing counsel, and since the seminal case in this area of the law dates back to 1988, *see Dep't of the Navy v. Egan*, 484 U.S. 518 (1988), there can hardly be a good reason for this inexcusable delay in raising such a critical issue.

No. 61], Ex. 5E (Leighton EC, Apr. 4, 2002) at 18; *id.*, Ex. 5G (Pyszczymuka EC, Apr. 12, 2002) at 1.)  After interviewing sixteen FBI employees who had served with plaintiff, the Security Division's investigator ultimately concluded that the concerns in the Leighton EC were "unfounded."  (*See id.*, Ex. 5F (Tucker EC, June 19, 2002) at 7.)

Defendant contends that "courts do not have jurisdiction to adjudicate a claim that the initiation of a security investigation is an act of discrimination or retaliation under Title VII . . . ." (Mot. to Dismiss at 1.)  In support, defendant cites three circuit court decisions: *Becerra v. Dalton*, 94 F.3d 145 (4th Cir. 1996), *Hill v. White*, 321 F.3d 1334 (11th Cir. 2003), and *Panoke v. U.S. Army Mil. Police Brig.*, 307 F. App'x 54 (9th Cir. 2009), *aff'g* 2007 WL 2790750 (D. Haw. Sept. 21, 2007).  All three courts held that they could not review a military employee's claim that his employer took adverse action against him by undertaking a security investigation that led to the denial or revocation of his security clearance.  These decisions all invoked the Supreme Court's holding in *Egan* that the executive branch's decision to deny or revoke a security clearance is non-justiciable.  *See* 484 U.S. at 527-30.  Although *Egan* did not examine the question of a security investigation, the courts in *Becerra*, *Hill*, and *Panoke* concluded that the security investigations at issue in those cases were similarly non-justiciable because they culminated in a determination that the employee was unfit for a security clearance.  Therefore, the courts reasoned, judicial review of the investigation's basis would necessarily entail judicial review of the merits of the decision denying or revoking the security clearance.  *See Panoke*, 307 F. App'x at 56 ("[T]he circumstances *surrounding the revocation* of Panoke's security clearance must be precluded from review." (emphasis added)); *Hill*, 321 F.3d at 1336 ("To review the initial stages of a security clearance determination *is to review the basis of the determination itself* regardless of how the issue is characterized."); *Becerra*, 94 F.3d at 149 ("[I]f permitted to

3

review the initial stage of a security clearance determination to ascertain whether it was a retaliatory act, the court *would be required* to review the very issues that the Supreme Court has held are non-reviewable." (emphasis added)).

The D.C. Circuit similarly held in *Ryan v. Reno*, 168 F.3d 520 (D.C. Cir. 1999), a case not cited by defendant, that "under *Egan* an adverse employment action *based on denial or revocation of a security clearance* is not actionable under Title VII." *Id.* at 524 (affirming dismissal of Title VII complaint for lack of jurisdiction on non-justiciability grounds) (emphasis added); *see also Bennett v. Chertoff*, 425 F.3d 999, 1000 (D.C. Cir. 2005) (affirming dismissal of plaintiff's Title VII discrimination and retaliation claims against Transportation Safety Administration because agency "interposed the defense of her *inability to sustain a security clearance* in response to her allegations" and such determinations are non-justiciable (emphasis added)). *Egan* and its progeny thus command that once the executive has determined that an individual is unworthy of a security clearance, the judiciary cannot probe the circumstances surrounding that determination for discriminatory or retaliatory animus. *See, e.g.*, *Ryan*, 168 F.3d at 524 (noting that plaintiffs could not challenge "authenticity" of agency's proffered reason for denying security clearances without also challenging reason's validity and thereby necessarily challenging underlying merits of clearance denial).

In the case at bar, however, plaintiff's security clearance was not revoked. To the contrary, the Security Division deemed the security concerns documented in the Leighton EC to be unfounded. Accordingly, neither *Egan*, *Ryan*, *Bennett*, nor any of the cases cited by defendant directly govern this case.[2] As this appears to be a question of first impression, the

---

[2] Defendant does not invoke Title VII's national security exemption for certain employment actions. That exemption provides that "it shall not be an unlawful employment practice for an employer to fail or refuse to hire and employ any individual . . . [or] discharge any

Court will more closely examine the Supreme Court's decision in *Egan* in order to determine whether its reasoning is applicable to the facts presented here.

*Egan* explained that the President, as commander-in-chief of the armed forces and head of the executive branch, is constitutionally vested with the authority "to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information . . . ." 484 U.S. at 527. "[T]he grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch." *Id.* "[A] clearance may be granted only when 'clearly consistent with the interests of the national security.'" *Id.* at 528 (quoting Executive Order and regulations). The decision to grant a clearance represents "an attempt to predict [an employee's] possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information." *Id.* Citing deference to the executive in "military and national security affairs," *id.* at 530, the Court expressed concern that "it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence." *Id.* at 529.

As in this case, plaintiffs in *Becerra*, *Hill*, and *Panoke* argued that their supervisors had

---

individual from any position . . . if the occupancy of such position . . . is subject to any requirement imposed in the interest of the national security of the United States under any security program . . . and such individual has not fulfilled or has ceased to fulfill that requirement." 42 U.S.C. § 2000e-2(g).  This provision deprives a court of jurisdiction over a Title VII claim based on a failure to hire or a discharge premised upon the plaintiff's inability to obtain or maintain a security clearance. *See Bennett*, 425 F.3d at 1000 (affirming district court's dismissal of complaint for lack of jurisdiction under § 2000e-2(g)); *accord Cruz-Packer v. Chertoff*, 612 F. Supp. 2d 67, 71 (D.D.C. 2009) (granting motion to dismiss for lack of jurisdiction "over claims implicating the merits of a decision to deny a security clearance").

been motivated by unlawful animus and made knowingly false accusations about them. But unlike this case, *Becerra*, *Hill*, and *Panoke* also involved agency decisionmakers who reviewed those accusations and reached a conclusion, committed to their discretion by law, that the plaintiffs' reported conduct or characteristics were inconsistent with the interests of national security. By examining the motives for – and potentially casting doubt upon – the initial accusations, the courts in those cases would have been in the position of "second-guess[ing]" the decisionmakers who, pursuant to the Executive Orders that delegate the President's authority to control access to classified information, saw fit to credit those accusations when deeming the plaintiffs unfit to access such information. *Hill*, 321 F.3d at 1335-36 (discussing *Becerra*).

Here, the Court – and the jury – need not engage in any such second-guessing. The Security Division, and not the OIO, is the FBI entity charged with "'assur[ing] the loyalty, reliability, suitability, and trustworthiness of applicants, employees, and others who work with, will work with, or have access to sensitive or classified [FBI] information and material.'" *Rattigan III*, 604 F. Supp. 2d at 44 (quoting defendant's exhibit). The Security Division concluded that Leighton's concerns about plaintiff were unfounded. Therefore, the FBI decisionmaking body responsible for making security determinations has *already determined* that plaintiff's activities were not inconsistent with the needs of national security.[3] Plaintiff does not challenge this determination – he embraces it. And, contrary to defendant's implication, there is no question before the Court or the jury as to the reasonableness of the Security

---

[3] Had the Security Division decided instead that the observations of the Leighton EC were meritorious, the next step would appear to have been the communication of that conclusion to the FBI's Security Programs Manager, who could have instituted established procedures for revoking plaintiff's clearance and suspending his access to classified information. (*See* Reply, Ex. B (reprinting regulations).) In that event, plaintiff's claim would be indistinguishable from those at issue in the cases cited by defendant, and the validity of the ultimate decision regarding revocation would not be reviewable by a court.

Division's investigatory process. (*See* Def.'s Response to Pl.'s Mot. for Adjournment ["Reply"] [Dkt. No. 99] at 1-2.)

Rather, the only remaining question in this litigation is the legitimacy of the referral, *by those who have no role in security clearance decisions*, that triggered the Security Division's fact-gathering interviews. In other words: was the drafting and editing of the Leighton EC and its referral to the Security Division motivated by unlawful retaliatory animus? Unlike *Becerra*, *Hill*, and *Panoke*, the answer to this question will not cast doubt on any wholly discretionary judgment that plaintiff was unworthy of a security clearance, for no such judgment was ever made. The OIO personnel whose actions are at issue here were not in a position to determine plaintiff's suitability for access to sensitive national security information – hence their need to refer the Leighton EC to the Security Division, because only the latter could make such a "[p]redictive judgment." *Egan*, 484 U.S. at 529. *Cf. Delgado v. Ashcroft*, No. 99-CV-2311, 2003 WL 24051558, at *6 (D.D.C. May 29, 2003) (asserting jurisdiction over plaintiffs' Title VII challenge to hiring decisions that did not involve security clearance denials and where no one in the FBI unit whose actions were being challenged "had anything to do with making national security decisions concerning applicants"); *Jones v. Ashcroft*, 321 F. Supp. 2d 1, 8-9 (D.D.C. 2004) (same, quoting *Delgado*).

Indeed, the record is clear that OIO personnel were in no position to reach *any* authoritative judgment on the merits about plaintiff's conduct or characteristics, even those unrelated to national security. This is demonstrated by the internal debate as to whether Leighton's concerns were more properly referred to the Security Division or to the Employee Assistance Program ("EAP") for a multidisciplinary evaluation and by the facts that Pyszczymuka may have instructed Leighton to documents his observations in an EC (as opposed

7

to Pyszczymuka simply determining plaintiff's fitness for himself) and that Pyszczymuka and Smith may have instructed Leighton to refer the matter to the Security Division. *See Rattigan III*, 604 F. Supp. 2d at 41-44, 55-57. (*Compare* SJ Mot., Ex. X (Pyszczymuka EEO Aff., Apr. 16, 2003) at 8 (stating that Pyszczymuka told Leighton to document concerns in an EC), *and id.*, Ex. 4F (Leighton Dep., Nov. 28, 2007) at 191:6-15, 217:16-218:13, 233:15-236:16 (Leighton's testimony that OIO officials instructed him, *inter alia*, to change his recommendation for an EAP evaluation to a recommendation for a Security Division investigation), *with id.*, Ex. 4W (Pyszczymuka Decl., Apr. 24, 2008) ¶ 8 (stating that Pyszczymuka did not direct Leighton to document concerns in an EC), *and* Def.'s Mot. for Recons. of the Denial in Part of His Mot. for Summ. J. [Dkt. No. 90], Ex. A (Leighton Decl., July 1, 2009) ¶¶ 9, 12-13 (Leighton's disavowal of his 2007 deposition testimony).)

Pyszczymuka's ultimate decision to refer the Leighton EC to the Security Division is distinct from and antecedent to the Security Division's investigation, and thus, unlike *Ryan*, the referral to the Security Division is not "tantamount to [a] clearance denial[] . . . ." 168 F.3d at 524.[4] Further, the OIO's referral is not the sort of judgment call that "is committed by law to the appropriate agency of the Executive Branch" in the way that a security clearance evaluation is. *Egan*, 484 U.S. at 527. As OIO Deputy Assistant Director Leslie Kaciban testified at his deposition, "anybody in the FBI, even a support person," could directly report his or her concerns about a security risk to the Security Division without going through a supervisor or

---

[4] This case is therefore more analogous to *Jones* and *Delgado*, since the challenged action here, like the suitability determinations in those cases, is at least one step removed from the security clearance process and did not lead to a judgment that plaintiff was unworthy of a clearance. *See Jones*, 321 F. Supp. 2d at 7-8; *Delgado*, 2003 WL 24051558, at *6 (D.D.C. May 29, 2003) ("None of the plaintiffs was discontinued as a result of a failure to obtain security clearance.").

chain of command and without obtaining "anybody's approval." (SJ Mot., Ex. 4A (Kaciban Dep., Jan. 9, 2008) ["Kaciban Dep."] at 144:4-10.) Because plaintiff's claim is aimed only at conduct by OIO officials to whom there has been no delegation of presidential authority to determine suitability for security clearances, the jury's consideration of whether OIO officials were motivated by retaliatory animus when making their referral will not require any second-guessing of a national security judgment as was the case in *Egan*. Nor could there be. The Security Division found no basis for the concerns expressed in the Leighton EC, so any inquiry into the motives of OIO personnel will not require any assessment about the merits of the Security Division's conclusion. Accordingly, it is proper for this Court to assert jurisdiction over plaintiff's claim and give effect to Title VII's anti-retaliation provisions.[5]

The Court's conclusion is further buttressed by the concern that dismissing plaintiff's claim as non-justiciable would permit future agency officials *who do not make security clearance determinations* to immunize themselves from challenge based on claims of discrimination or retaliation. Such officials could present spurious national security allegations

---

[5] In other contexts, courts have recognized that the mere fact that a plaintiff's claim is tangentially related to the issue of a security clearance determination does not, on its own, bar judicial review. For example, courts have permitted plaintiffs to challenge other adverse actions that have arisen from the revocation of their security clearance. *See, e.g.*, *Ranger v. Tenet*, 274 F. Supp. 2d 1, 7-10 (D.D.C. 2003) (Collyer, J.) (denying motion to dismiss plaintiff's constitutional due process claim that revocation of security clearance and agency's subsequent stigmatizing statements was deprivation of liberty interest in reputation). And while the revocation of a security clearance is not subject to constitutional due process procedural protections, it does remain subject to any applicable statutory or regulatory procedures, *see Robinson v. Dep't of Homeland Sec.*, 498 F.3d 1361, 1365 (Fed. Cir. 2007), and courts have held that an employee may challenge the sufficiency of the statutory process received prior to the suspension or revocation of his or her clearance. *See, e.g.*, *Cheney v. Dep't of Justice*, 479 F.3d 1343, 1352-53 (Fed. Cir. 2007) (reviewing challenge to sufficiency of statutory process). Unlike any of these cases, the case at bar does not even involve a security clearance suspension or revocation, so it remains even more appropriate to subject the conduct of the agency's employees to applicable statutory constraints.

about a disfavored employee to another agency official who is, in fact, responsible for clearance determinations, and thereby insulate themselves from Title VII review in a situation where the security clearance decisionmaker ultimately *rejects* the allegations as unfounded.

For the foregoing reasons, defendant's motion to dismiss [Dkt. No. 97] is **DENIED**. Plaintiff's motion to adjourn the trial [Dkt. No. 98] is also **DENIED**.

**SO ORDERED.**

                                                              /s/
                                          ELLEN SEGAL HUVELLE
                                          United States District Judge

DATE: July 20, 2009